```
         UNITED STATES DISTRICT COURT FOR THE
           SOUTHERN DISTRICT OF WEST VIRGINIA
                      CHARLESTON
```

**UNITED STATES OF AMERICA,**

        Plaintiff,

v.                            CIVIL ACTION NO. 2:10-1007

**$475,823.75, MORE OR LESS,
IN UNITED STATES CURRENCY,**

        Defendant.

(Myra C. Miller, and
 John J. Miller;
 **No pending federal criminal charges**)


### VERIFIED COMPLAINT OF FORFEITURE

    Comes now the United States of America, by and through its attorneys, R. Booth Goodwin II, United States Attorney for the Southern District of West Virginia, and Betty A. Pullin, Assistant United States Attorney for the Southern District of West Virginia, and respectfully states as follows:

### NATURE OF THE ACTION

    1. This is a civil action *in rem* brought on behalf of the United States of America, pursuant to 18 U.S.C. § 983(a), to enforce the provisions of 21 U.S.C. § 881(a)(6) for the forfeiture of a sum of money furnished or intended to be furnished in exchange for a controlled substance, or constituting proceeds traceable to such an exchange, or which was used or intended to be used to

facilitate one or more controlled substance violations, 21 U.S.C. §§ 801 et seq., and to enforce the provisions of 18 U.S.C. § 981(a)(1)(C) for the forfeiture of property constituting or derived from proceeds traceable to one or more health card fraud violations, 18 U.S.C. § 1347.

## THE DEFENDANTS IN REM AND POTENTIAL INTERESTED PARTIES

2. The defendant currency consists of the following:

(A) $465,815.00, more or less, which was seized from the residence of Myra and John J. Miller, 231 Central Avenue, South Williamson, Kentucky, pursuant to a federal search warrant issued by the United States District Court for the Eastern District of Kentucky and executed on the Miller residence on or about March 2, 2010; and

(B) $10,008.75, more or less, in United States currency which was seized from account no. XXXXXXXX9439, in the name of Myra C. Miller, at Branch Banking & Trust (BB&T), pursuant to a federal seizure warrant issued by the United States District Court for the Southern District of West Virginia and executed on the account or about March 2, 2010.

3. The currency identified in paragraph 2 above is presently in the custody of the United States Marshals Service for the Southern District of West Virginia, reference CATS Nos. 10-FBI-002707 and 10-FBI-002615.

## JURISDICTION AND VENUE

4. Plaintiff, United States of America, brings this action *in rem* in its own right to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

5. This Court has *in rem* jurisdiction over the defendant property pursuant to 28 U.S.C. 1355(b) since the acts giving rise to forfeiture occurred in this district.

6. Upon the filing of this verified complaint, the plaintiff requests that the Clerk of this Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b)(i), which the plaintiff will have executed upon the defendant property, pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

7. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district and, pursuant to 28 U.S.C. § 1395(b), because the property is located in this district.

## BASIS FOR FORFEITURE

8. The defendant currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because it constitutes a thing of value furnished or intended to be furnished in exchange for a controlled substance in violation of 21 U.S.C.

§§ 801 et seq., or is proceeds traceable to such an exchange, or was used or intended to be used to facilitate one or more controlled substance violations.

9. The defendant currency is also subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), as property constituting or derived from proceeds traceable to one or more health care fraud offenses, that is, 18 U.S.C. §§ 669, 1030 and 1347.

**FACTS**

10. The facts giving rise to the forfeitability of the defendant currency are as follows:

(A) On or about March 2, 2010, and during the course of an extensive and ongoing investigation by various federal and state law enforcement agencies into the unlawful prescription practices of the Mountain Medical Care Center LLC ("Mountain Medical"), 35 West Third Avenue, Williamson, West Virginia (formerly known as the Williamson Wellness Center), federal search warrants were executed on several locations in Southern West Virginia and Eastern Kentucky including the residence of Myra C. Miller and John J. Miller in South Williamson, Kentucky. A federal seizure warrant authorizing the seizure of up to $4.6 million was also executed on all proceeds on deposit in two specified accounts at Branch Banking & Trust (BB&T), in the name of Myra C. Miller. As a result of executing the warrants, the sum of $465,815.00, more or less, was seized from Miller's residence pursuant to the search warrant and the sums of

$10,008.75 and $4,568.53, more or less, were seized from Miller's accounts at BB&T, that is, from account no. XXXXXXXXX9439 and XXXXXXXXX9358, respectively, pursuant to the seizure warrant.[1]

(B) During the course of the investigation, it was determined that Myra C. Miller, who was an employee of Mountain Medical but was not a physician, along with other employees of the clinic, conspired with and aided and abetted Mountain Medical Drs. Katherine Hoover, M.D., William Ryckman, M.D. and J. Victorio Teleron, Jr., M.D., in unlawfully obtaining and distributing certain controlled substances to patients of the clinic and in committing health care fraud, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 18 U.S.C. §§ 1347, 2.

(C) At all relevant times, Drs. Hoover, Ryckman and Teleron possessed valid DEA Registrations in the State of West Virginia and were authorized to prescribe controlled substances. The address indicated in DEA records as their location of registration was 35 West Third Avenue, Williamson, West Virginia, which was also the address of Mountain Medical.

(D) A physician who wishes to possess, distribute, dispense, or prescribe controlled substances as part of his or her professional practice must do so pursuant to a DEA registration (21

---

[1] Proceeds on deposit in Miller's account no. XXXXXXXXX9358, totaling $4,568.83, more or less, are not included in this forfeiture action because the claim filed in the administrative forfeiture proceeding by Myra C. Miller for that account was ruled deficient by the FBI and the seized currency is presently undergoing administrative forfeiture by the FBI, reference CATS No. 10-FBI-002614.

U.S.C. § 822; 21 C.F.R. § 1301.11). A prescription for a controlled substance must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his or her professional practice. 21 C.F.R. § 1306.04(a). It is a violation of 21 U.S.C. § 843(a)(2) to use a DEA registration number issued to another person to distribute controlled substances.

(E) A physician violates 21 U.S.C. § 841 (unlawful distribution of controlled substances) when: (a) the physician distributes or dispenses a controlled substance; (b) the physician acts knowingly and intentionally; and (c) the physician's actions are not for a legitimate medical purpose in the usual course of his or her professional medical practice or are beyond the bounds of medical practice. United States v. Singh, 54 F.3d 1182, 1186 (4th Cir. 1995).

(F) The term "controlled substance" means a drug or other substance included in Schedules I through V as found in 21 U.S.C. § 812 and 21 C.F.R. §§ 1308.11 through 1308.15. The term "Lortab" is a trade name for hydrocodone, a schedule III controlled substance; and the term "Xanax" is a trade name for alprazolam, a schedule IV controlled substance. Both hydrocodone and alprazalom are popular drugs of abuse that are commonly obtained by fraud, diverted and sold on the streets for a profit. Taken together, they can produce a heightened effect for the drug user/abuser.

(G) The term "distribute" means to deliver (other than by administering or dispensing) a controlled substance. 21 U.S.C. § 802(11). This includes issuing prescriptions.

### MOUNTAIN MEDICAL CARE CENTER LLC's STANDARD OPERATING PROCEDURES REGARDING PRESCRIBING OF CONTROLLED SUBSTANCES TO CLINIC PATIENTS

11. Based on undercover visits by law enforcement officers to Mountain Medical and on information provided by numerous patients and employees of the clinic, the standard operating practices of the clinic with regard to prescribing controlled substances are as follows:

(A) A patient making an initial visit to the clinic is charged $450. Medicaid and Medicare are not accepted. A majority of patients pay for their office visits in cash and receive the same prescriptions (hydrocodone and alprazalom).

(B) On the patient's first visit, he or she is seen by a practitioner and it is generally requested that the patient obtain an MRI or x-ray. All controlled substance prescriptions are called in to the pharmacy by the clinic and the patient is given a list of approved locally-owned pharmacies located in West Virginia and Kentucky from which he or she may choose for their call-in to be placed. No refills are given on controlled substance prescriptions and patients are required to visit the clinic each time a prescription is needed.

(C) On subsequent visits, the patient generally does not see a practitioner. Instead, the patient is simply asked by the receptionist if his or her complaint is still the same and if he or she has had any changes since their last visit. The patient's vital signs are taken and he or she is asked if they want to see a practitioner. If the patient states that his complaint is the same and does not want to see the practitioner, a prescription is called in for the same controlled substance as obtained during the previous visit. The patient is required to pay $150 for the follow-up visits.

(D) Based on prescription records maintained by the West Virginia Board of Pharmacy, in 2009 the clinic called in controlled substance prescriptions for approximately 175 patients per day, assuming a five-day work week, fifty weeks a year.

(E) Numerous patients and employees of Mountain Medical have identified Myra Miller as the "office manager" and also as one of the persons at the clinic who weighed patients, took their blood pressure and called in their prescriptions of hydrocodone and alprazolam. Some patients reported that the doctor's name indicated on their prescription bottles was of a doctor whom they had never even seen.

(F) Several patients of Mountain Medical have also identified Myra Miller as one of the office staff who would become irritated and sometimes argue with a patient when the patient insisted on

seeing a doctor.  Patients were forced to wait three to four hours to see a doctor and sometimes were terminated as patients and told to go elsewhere when they insisted on seeing a doctor.

(G) Checks paid out of Dr. Ryckman's BB&T account on a fairly regular basis to Dr. Hoover in 2009 were signed by Myra Miller and were shown as being deposited into Dr. Hoover's Wesbanco account. While wage reports for the second and third quarters for the clinic do not show wages being paid to Dr. Hoover, she appears to be getting paid by the clinic through the efforts of Dr. Ryckman and Myra Miller.  These checks that were signed by Myra Miller ranged from $2,500 to $5,000.

### PRESCRIPTION PRACTICE
### AT MOUNTAIN MEDICAL

12. Prescription records of the West Virginia Board of Pharmacy, for the period December 2002 through January 25, 2010, reveal that Dr. Katherine Hoover was the number one prescriber of controlled substances in West Virginia, based upon the number of prescriptions filled under her DEA registration number as reported by pharmacies in West Virginia.  Since December 2002, there have been 355,132 prescriptions for controlled substances issued under her DEA number.  This figure does not include Dr. Hoover's controlled substance prescriptions filled in Kentucky, which is very close to her Williamson, West Virginia office.

13. Law enforcement contacted the Mountain Medical office anonymously and was informed that "the doors open at 7:00 a.m. and

the doctor's window opens at 7:30 a.m." The officer was also advised that the clinic closes at 4:00 p.m. every day, Monday through Friday.

14. The West Virginia Board of Pharmacy's database reveals that in 2009, Dr. Hoover had 30,472 unique patient scripts. ("Unique patient scripts" means the number of individuals who filled controlled substance prescriptions under that physician's DEA registration number). Dr. Teleron, who worked at the clinic from 2008 to 2010, had 12,205 unique patients scripts filled under his DEA number in 2009. Dr. Ryckman had 1,176 prescriptions filled under his DEA number. Using the unique patients data described above for Dr. Hoover, Dr. Ryckman and Dr. Teleron, and using the percentage of 70% provided by a Mountain Medical employee as the percentage of patients who paid in cash, and who paid at least $150 per visit, Mountain Medical had total revenue intake in 2009 alone of $4,604,565 in cash. This figure would be substantially higher if the total for new patients who paid $450 per visit was included, as well as other income from the Kentucky residents.

## FINANCIAL ANALYSIS

15. Wage reports from the State of West Virginia for Mountain Medical show that Myra Miller, office manager, earned total wages of $1,163,842.70 from the 1st quarter of 2006 through the 4th quarter of 2008, averaging $387,950 per year, and that Dr. Ryckman paid her a total of $193,776 for the 2nd and 3rd quarters of 2009.

16. Bank statements from the Branch Banking & Trust (BB&T) account nos. XXXXXXXXX9358 (Investors Deposit Account) and XXXXXXXXX9439 (classic banking - MM account) were active accounts maintained by Myra C. Miller and John J. Miller.

17. John J. Miller's main if not sole source of income is believed to be a monthly disability check from his disability retirement with the West Virginia State Police.

18. Inasmuch as Myra Miller was earning an excessively large salary as office manager at Mountain Medical and the clinic was unlawfully operated as and essentially constituted a "pill mill," any proceeds derived by Myra Miller in the form of salary, bonuses or otherwise, from the clinic constitute proceeds of or is traceable to proceeds of one or more violations of 21 U.S.C. §§ 846, 841(a)(1) and, therefore, is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

## MEDICARE FRAUD

19. Between January 2006 and May 2009, a number of the individuals who obtained controlled substance prescriptions under the DEA registration numbers of Dr. Hoover and Dr. Teleron were Medicare beneficiaries. Medicare is a program established and funded by the United States to provide health insurance to the elderly, severely disabled, or persons with specific chronic medical conditions. The clinic did not accept Medicare as a form of payment and required at least $150 cash per visit. Some of the Medicare

beneficiaries who paid cash to receive controlled substance prescriptions from these doctors used their Medicare benefits to pay $383,452 to pharmacies for the drugs. Medicare would not pay for prescription drugs that were not medically necessary and/or that were not prescribed pursuant to valid prescriptions issued in the normal course of medical practice. Accordingly, the Medicare program was defrauded of at least $383,452.00 by the physicians, the employees of the clinic and the beneficiaries who caused that money to be paid by Medicare pursuant to the operation of Mountain Medical, in violation of 18 U.S.C. § 1347.

## CONCLUSION

20. Based on the foregoing, Myra C. Miller conspired with others associated with the Mountain Medical Care Center LLC and its predecessor Williamson Wellness Center to unlawfully distribute hydrocodone and alprazalom, schedule III and IV controlled substances, and did in fact distribute and cause to be distributed such controlled substances from 2006 to 2010, in violation of 21 U.S.C. §§ 841(a)(1), 846; used the DEA registration number issued to another person to unlawfully distribute such controlled substances, in violation of 21 U.S.C. § 843(1)(2); and aided and abetted others associated with the Mountain Medical Care Center LLC and its predecessor Williamson Wellness center to commit health care fraud involving the federal Medicare program, in violation of 18 U.S.C. §§ 1347, 2.

21. For the foregoing reasons, the defendant currency is forfeitable to the United States, pursuant to 21 U.S.C. § 881(a)(6), as money furnished or intended to be furnished in exchange for a controlled substance, or constituting proceeds traceable to such an exchange, or which was used or intended to be used to facilitate one or more controlled substance violations, 21 U.S.C. §§ 801 et seq. In the alternative, it is also forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C) as property constituting or derived from proceeds traceable to one or more health care fraud offenses, 18 U.S.C. § 1347.

WHEREFORE, the United States prays that process of warrant in rem issue for the arrest of the defendant currency; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property be forfeited to the United States for disposition according to law; and that the United States be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted,

UNITED STATES OF AMERICA
By Counsel

R. BOOTH GOODWIN II
United States Attorney

By: s/Betty A. Pullin
Betty A. Pullin, WV Bar Number: 5590
Attorney for the United States
United States Attorney's Office
300 Virginia Street, East, Room 4000
Charleston, West Virginia 25301
Telephone: (304) 345-2200
Fax: (304) 347-5104
Email: betty.pullin@usdoj.gov

**VERIFICATION**

STATE OF WEST VIRGINIA
COUNTY OF KANAWHA, TO-WIT:

I, James F. Lafferty II, Special Agent with the Federal Bureau of Investigation, declare under penalty of perjury as provided by 28 U.S.C. § 1746, the following:

That the foregoing Complaint for Forfeiture in rem is based upon reports and information I have gathered and which have been provided to me by various law enforcement personnel, and that everything contained therein is true and correct to the best of my knowledge and belief, except where stated to be upon information and belief, in which case I believe it to be true.

Executed on August 9, 2010.

```
                                        _____
                                        JAMES F. LAFFERTY II
```

Taken, subscribed and sworn to before me this 9th day of August, 2010.



_____
Notary Public

My commission expires on  May 25, 2014  .

15