UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA,

                  Plaintiff,

    v.                              CIVIL ACTION NO. 2:10-1007

$475,823.75, MORE OR LESS,
IN UNITED STATES CURRENCY;
TWO REAL PROPERTIES IN
WEST VIRGINIA and ONE REAL
PROPERTY IN KENTUCKY, together
with all improvements thereon
and appurtenances thereto,

                  Defendants.


(Myra C. Miller, and
 John J. Miller;
 No pending federal criminal charges)


AMENDED
VERIFIED COMPLAINT OF FORFEITURE

      Comes now the United States of America, by and through its
attorneys, R. Booth Goodwin II, United States Attorney for the
Southern District of West Virginia, and Betty A. Pullin, Assistant
United States Attorney for the Southern District of West Virginia,
and respectfully states as follows:

NATURE OF THE ACTION

      1.  This is a civil action _in_ _rem_ brought on behalf of the
United States of America, pursuant to 18 U.S.C. §§ 983(a), 985, to
enforce the provisions of 21 U.S.C. §§ 881(a)(6) and (a)(7), for
the forfeiture of sums of currency and three real properties which

were furnished or intended to be furnished in exchange for one or more controlled substances which were prescribed outside the usual course of professional practice,[1] or constitute proceeds traceable to such an exchange, or which were used or intended to be used to facilitate one or more such controlled substance violations, 21 U.S.C. §§ 801 et seq., or a conspiracy to commit such violations.

### THE DEFENDANTS IN REM
### AND POTENTIAL INTERESTED PARTIES

2.   The defendant currency consists of the following:

(A)   $465,815.00, more or less, which was seized from the residence of Myra C. and John J. Miller, 231 Central Avenue, South Williamson, Kentucky, pursuant to a federal search warrant issued by the United States District Court for the Eastern District of Kentucky and executed on the Miller residence on or about March 2, 2010; and

(B) $10,008.75, more or less, in United States currency which was seized from account no. XXXXXXXXX9439, in the name of Myra C. Miller, at Branch Banking & Trust (BB&T), pursuant to a federal seizure warrant issued by the United States District Court for the Southern District of West Virginia and executed on the account on or about March 2, 2010.

3.   The currency identified in paragraph 2 above is presently

---

[1]United States v. Moore, 423 U.S. 122, 96 S. Ct. 335 (1975); United States v. Singh, 54 F.3d 1182, 1186 (4th Cir. 1995).

in the custody of the United States Marshals Service for the Southern District of West Virginia, reference CATS Nos. 10-FBI-002707 and 10-FBI-002615.

4.   The defendant real properties are more particularly described as follows:

(A)   Various parcels of real property on West Third Avenue, Williamson, Mingo County, West Virginia, together with all improvements thereon and appurtenances thereto, and being more particularly described in those certain deeds dated October 29, 2009, and recorded in the Office of the Clerk of the County Commission for Mingo County, West Virginia, in Deed Book 428 at pp. 713, 715, 717 and 719.  Said properties are titled in the name of "W D, LLC."

(1)   Records with the West Virginia Secretary of State's Office indicate that "W D, LLC" is a member-managed limited liability company that was organized on September 24, 2009, by Myra Miller for the purpose of real estate management.

(2)   Myra Miller is indicated as the sole "member" of W D, LLC.

(3)   W D, LLC's address is listed with the Secretary of State as 35 West Third Avenue, Williamson, West Virginia, 25661.

(4)   The deeds referenced above indicate that the consideration paid for the properties totals $1.4 million.

(B)   Real property containing 78 acres, more or less, of surface, situated, lying and being on Big Lick Run of Tanner's Fork of Steer Creek, Center District, Gilmer County, West Virginia, together with all improvements thereon and appurtenances thereto, and being more particularly described in that certain deed dated April 21, 2006, and recorded in the Office of the Clerk of the County Commission for Gilmer County, West Virginia, in Deed Book 469 at page 479.

(1)   Said property is titled in the names of John J. Miller and Myra C. Miller, husband and wife, 231 Central Avenue, South Williamson, Kentucky, 41503.

(2)   The deed referenced above indicates that the consideration paid for the property was $50,000.

(3)   A credit line deed of trust in the amount of $40,000 and in favor of BB&T was recorded against this property in the Gilmer County Clerk's Office in Trust Deed Book 151 at page 454. Based on records of Myra Miller's BB&T account no. XXXXXX9439, this mortgage was paid in full on or about March 11, 2008.

(C)   Real property having a street address of 231 Central Avenue, South Williamson, Pike County, Kentucky, together with all improvements thereon and appurtenances thereto, and being more particularly described in that certain deed dated September 28, 2006, and recorded in the Office of the Clerk of the Clerk of the

County Court of Pike County, Kentucky, in Deed Book 911 at page 441.

 (1) Said property is presently titled solely in the name of Myra C. Miller, a married individual, of 231 Central Avenue, South Williamson, Pike County, Kentucky, 41503.

 (2) The deed indicates that the total consideration paid for this property was $200,000.

 (3) An unreleased mortgage is of record against this property in the Pike County Court Clerk's Office in Trust Deed Book 743 at page 322, in favor of Branch Banking & Trust (BB&T), Williamson, West Virginia.

 (D) All right, title and interest in the real properties identified in paragraphs 4(A) through (C) above vested in the United States upon commission of the acts giving rise to forfeiture. 21 U.S.C. § 881(h). Any party who thereafter takes title to these properties takes them subject to the interests of the United States unless they can establish themselves to be an innocent owner within the meaning of 18 U.S.C. § 983(d).

## JURISDICTION AND VENUE

 5. Plaintiff, United States of America, brings this action <u>in</u> <u>rem</u> in its own right to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

5

6.    This Court has _in rem_ jurisdiction over the defendant property pursuant to 28 U.S.C. 1355(b) since the acts giving rise to forfeiture occurred in this district.

7.    Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district.

8.    Upon the filing of this verified complaint, the plaintiff requests that the Clerk of this Court issue an arrest warrant _in rem_ pursuant to Supplemental Rule G(3)(b)(i), which the plaintiff will have executed upon the defendant currency, pursuant to 28 U.S.C. § 1355(d) and Rule G(3)(c), Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

9.    None of the defendant real properties have been seized by the United States or any of its agents.  The United States does not intend to seek physical custody of the defendant real properties during the pendency of this case unless exigent circumstances arise necessitating the United States to pursue such action in accordance with 18 U.S.C. § 985(d).

## BASIS FOR FORFEITURE

10.  The facts giving rise to the forfeitability of the defendant property are as follows:

### Chain of Ownership of the Clinic

(A) From at least 2004 until approximately January 2006, a medical clinic known as the "Williamson Wellness Center" operated at 35 West Third Avenue, Williamson, Mingo County, West Virginia. During this time, the clinic was allegedly owned by William F. Ryckman, M.D. of Sutersville, Pennsylvania, and employed several physicians and medical staff including, but not limited to, Dr. Katherine Hoover, Camille Helsel and Myra C. Miller.

(B) In approximately January 2006, the Williamson Wellness Center's name changed to "Mountain Medical Care Center, LLC" (hereinafter "Mountain Medical").

(1)  Records of the West Virginia Secretary of State's Office indicate that Mountain Medical was a member-managed professional limited liability company that was organized on January 13, 2006, by Camille Helsel for the purpose of the "professional practice of advanced practice nursing."

(2)  Camille Helsel and Myra Miller were identified in the records of the Secretary of State as the only two members of Mountain Medical.

(3)  Myra Miller signed the 2007 and 2008 Annual Reports filed with the Secretary of State's Office as its "Office Manager."

(4)   Mountain Medical's principal mailing address was listed as Post Office Box 700, Williamson, West Virginia, 25661, which was also the same address listed for Myra Miller on the annual report for 2007.

(5)   In addition to being the new owner of the clinic, Camille Helsel was also one of the clinic's nurse practitioners.

(6)   Although the clinic's name changed, it continued operating at the same location, with primarily the same staff and in virtually the same manner as it had when it was known as the Williamson Wellness Center.

(C) In or about February 2009, ownership of the clinic abruptly returned to William F. Ryckman, M.D., however, it continued its same operations at the same location and with primarily the same staff through and including March 2010.   For ease of reference, the medical clinic at issue in this forfeiture action will be referred to throughout the remainder of this complaint as "the clinic."

(D) At all times referenced in paragraphs 10(A) through (C) above, Dr. Katherine A. Hoover and other physicians were employed by the clinic and were licensed to practice medicine in the State of West Virginia.

(E) At all times referenced in paragraphs 10(A) through (C) above, Dr. Katherine A. Hoover and other physicians employed by the clinic possessed valid DEA Registrations in the State of West Virginia and were authorized to prescribe controlled substances.

8

The address indicated in DEA records as their location of registration was 35 West Third Avenue, Williamson, West Virginia, which was also the clinic's address.

(F)  At all times referenced in paragraphs 10(A) through (C) above, Myra C. Miller was the office manager of, or otherwise had supervisory authority over, the clinic.  In that capacity, she oversaw and/or controlled day-to-day operations, including hours and days of operation, hiring and termination of employees and scheduling and/or managing the work hours of physicians and staff. She also handled most if not all financial matters of the clinic including but not limited to paying bills, payroll and other expenses of the clinic, and keeping track of cash payments and other income of the clinic and depositing those funds in the bank account on a daily or as needed basis.  For 2009, Myra Miller was paid a salary in excess of $400,000 as office manager of the clinic.

## Investigation of Illegal Activities
## of the Clinic Physicians and Staff

(G) On or about March 2, 2010, and during the course of an extensive and ongoing investigation by various federal and state law enforcement agencies into the unlawful prescription practices of the clinic's physicians and staff, federal search warrants were executed on several locations in Southern West Virginia, Western Pennsylvania and Eastern Kentucky including the residence of Myra C. Miller and John J. Miller in South Williamson, Kentucky.  A federal seizure warrant authorizing the seizure of up to $4.6 million was also

executed on all proceeds on deposit in two specified accounts at Branch Banking & Trust (BB&T), in the name of Myra C. Miller. As a result of executing the warrants, the sum of $465,815.00, more or less, was seized from Miller's residence pursuant to the search warrant and the sums of $10,008.75 and $4,568.53, more or less, were seized from Miller's accounts at BB&T, that is, from account no. XXXXXXXXX9439 and XXXXXXXXX9358, respectively, pursuant to the seizure warrant.[2]

(H) During the course of the investigation, it was determined that Myra C. Miller, in her capacity as office manager and employee of the clinic, along with other employees, conspired with and aided and abetted various physicians employed by the clinic including, but not limited to, Drs. Katherine Hoover, M.D., William Ryckman, M.D. and J. Victorio Teleron, Jr., M.D., in prescribing or otherwise distributing certain controlled substances to patients and employees of the clinic, and to Miller's husband John J. Miller, outside the usual course of professional practice, and to misuse a physician's DEA registration number, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 843, and United States v. Moore, 423 U.S. 122, 96 S. Ct. 335 (1975); United States v. Singh, 54 F.3d 1182, 1186 (4th Cir. 1995).

---

[2]Proceeds on deposit in Miller's account no. XXXXXXXXX9358, totaling $4,568.83, more or less, are not included in this forfeiture action because the claim filed in the administrative forfeiture proceeding by Myra C. Miller for that account was ruled deficient by the FBI and the seized currency is presently undergoing administrative forfeiture by the FBI, reference CATS No. 10-FBI-002614.

(I) At all relevant times, the physicians who were employed by the clinic had valid DEA Registrations in the State of West Virginia and were authorized to prescribe controlled substances.  The address indicated in DEA records as their location of registration was 35 West Third Avenue, Williamson, West Virginia, which was also the clinic's address.

(J) A physician who wishes to possess, distribute, dispense, or prescribe controlled substances as part of his or her professional practice must do so pursuant to a DEA registration (21 U.S.C. § 822; 21 C.F.R. § 1301.11).  A prescription for a controlled substance must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his or her professional practice.  21 C.F.R. § 1306.04(a).  It is a violation of 21 U.S.C. § 843(a)(2) to use a DEA registration number issued to another person to distribute controlled substances.

(K) A physician violates 21 U.S.C. § 841 (unlawful distribution of controlled substances) when: (a) the physician distributes or dispenses a controlled substance; (b) the physician acts knowingly and intentionally; and (c) the physician's actions are not for a legitimate medical purpose in the usual course of his or her professional medical practice or are beyond the bounds of medical practice.  <u>United States v. Singh</u>, 54 F.3d 1182, 1186 (4th Cir. 1995).

(L)  The term "controlled substance" means a drug or other substance included in Schedules I through V as found in 21 U.S.C. § 812 and 21 C.F.R. §§ 1308.11 through 1308.15.  The term "Lortab" is a trade name for hydrocodone, a schedule III controlled substance; and the term "Xanax" is a trade name for alprazolam, a schedule IV controlled substance.  Both hydrocodone and alprazalom are popular drugs of abuse that are commonly obtained by fraud, diverted and sold on the streets for a profit.  Taken together, they can produce a heightened effect for the drug user/abuser.

(M)  The term "distribute" means to deliver (other than by administering or dispensing) a controlled substance.  21 U.S.C. § 802(11).  This includes issuing prescriptions.

### The Clinic's Standard Operating Procedures Regarding Prescribing of Controlled Substances to Clinic Patients

11.  Based on undercover visits by law enforcement officers to the clinic and on information provided by numerous patients and employees, the standard operating practices of the clinic with regard to prescribing controlled substances were as follows:

(A) A patient making an initial visit to the clinic was charged $450. Medicaid and Medicare were not accepted.  A majority of patients paid for their office visits in cash and received the same prescriptions (hydrocodone and alprazalom).

(B) On the patient's first visit, he or she was seen by a practitioner and it was generally requested that the patient obtain an MRI or x-ray.  All controlled substance prescriptions were called

in or faxed to certain pharmacies by the clinic.   The patient was given a list of approved locally-owned pharmacies located in West Virginia and Kentucky from which he or she could choose for their call-in to be placed.   No refills were given on controlled substance prescriptions and patients were required to visit the clinic each time a prescription was needed.

(C)   On subsequent visits, the patient generally did not see a practitioner.   Instead, the patient was simply asked by the receptionist if his or her complaint was still the same and if he or she had any changes since their last visit.   The patient's vital signs were taken and he or she was asked if they wanted to see a practitioner.   If the patient stated that his or her complaint was the same and did not want to see the practitioner, a prescription was called in for the same controlled substance as obtained during the previous visit.   The patient was required to pay $150 cash for the follow-up visits.

12.   Based on prescription records maintained by the West Virginia Board of Pharmacy, in 2009 the clinic called in controlled substance prescriptions for approximately 175 patients per day, assuming a five-day work week, fifty weeks a year.   Prescriptions for controlled substances, including but not limited to hydrocodone and alprazolam, were issued by clinic staff, per direction of Myra Miller and the clinic's physicians, under DEA registrations for

13

physicians who were not on the premises and who had not examined the patients.

(A)   Prescriptions for such controlled substances were also issued to patients by clinic staff, per direction of Myra Miller and the clinic's physicians, simply by the patient paying a fee and without examination of the patient by a physician. Oftentimes this occurred on a monthly or other regular basis for many patients.

(B)   Myra Miller is widely known among office staff and patients, and the general public in the Williamson area, as the "office manager" or the person in control of the clinic. Office staff have reported that she would direct them as to which physician's DEA registration to use for the prescriptions issued on a given day.

(C)   Prescriptions for such controlled substances were so readily available at the clinic that lines of "patients" would form outside the clinic and down the sidewalk in front of the building. So many of these prescriptions were issued on a daily basis that the office staff had to resort to listing them on sheets of paper and faxing the list to the pharmacies, because it would be virtually impossible to write them all out on a given day.

(D)   Some patients have reported that the doctor's name indicated on their prescription bottles was of a doctor whom they had never even seen.

13.     Prescription records of the West Virginia Board of Pharmacy, for the period December 2002 through January 25, 2010, reveal that Dr. Katherine Hoover was the number one prescriber of controlled substances in West Virginia, based upon the number of prescriptions filled under her DEA registration number as reported by pharmacies in West Virginia. Since December 2002, there have been 355,132 prescriptions for controlled substances issued under her DEA number. This figure does not include Dr. Hoover's controlled substance prescriptions filled in Kentucky. At one point, Dr. Hoover became concerned about the number of prescriptions being issued under her DEA registration number and drawing attention to her, so the clinic staff began using the DEA registration number of another physician. Myra Miller often dictated to office staff which DEA registration number to use.

14.     During the investigation, one of the law enforcement officers contacted the clinic office anonymously and was informed that "the doors open at 7:00 a.m. and the doctor's window opens at 7:30 a.m." The officer was also advised that the clinic closed at 4:00 p.m. every day, Monday through Friday.

15.     The West Virginia Board of Pharmacy's database reveals that in 2009, Dr. Hoover had 30,472 unique patient scripts. ("Unique patient scripts" means the number of individuals who filled controlled substance prescriptions under that physician's DEA registration number). Dr. Teleron, who worked at the clinic from

15

2008 to 2010, had 12,205 unique patients scripts filled under his DEA number in 2009.  Dr. Ryckman had 1,176 prescriptions filled under his DEA number.  Using the unique patients data described above for Dr. Hoover, Dr. Ryckman and Dr. Teleron, and using the percentage of 70% provided by a clinic employee as the percentage of patients who paid in cash, and who paid at least $150 per visit, the clinic had total revenue intake in 2009 alone of $4,604,565 in cash.  This figure would be substantially higher if the total for new patients who paid $450 per visit was included, as well as other income from the Kentucky residents.

## FINANCIAL ANALYSIS

16.  Wage reports from the State of West Virginia for the clinic show that Myra Miller, office manager, earned total wages of $1,163,842.70 from the 1st quarter of 2006 through the 4th quarter of 2008, averaging $387,950 per year, and that Dr. Ryckman paid her a total of $193,776 for the 2nd and 3rd quarters of 2009.  The investigation has revealed that Myra Miller has little to no other source of legitimate income during that time period other than her salary from the clinic.

17.  Records of the West Virginia Secretary of State's Office indicate that on January 26, 2006, Myra C. Miller and John J. Miller formed a for-profit corporation named "Moo Management, Inc." for the purpose of "property management and retail sales" and "any lawful business for which corporations may be incorporated in WV."  The

16

principal business address was listed as 516 Elm Street, Williamson, West Virginia, and the corporation was designated as "terminated" effective June 17, 2008.  Records of income tax returns for the Millers that have been obtained from them or from their accountant through the underlying criminal investigation reveal that Moo Management operated at a loss for at least tax years 2006 through 2008, with a combined loss for those years in the amount of $211,000.

18.  Records of the West Virginia Secretary of State's Office indicate that on May 14, 2004, Myra C. Miller and John J. Miller formed a for-profit corporation named "JWDM, Inc." for the purpose of "rental property, lease equipment to businesses, retail sales." The principal business address was listed as 516 Elm Street, Williamson, West Virginia, and the corporation was designed as "terminated" effective December 1, 2008, as having been "revoked."

19.  John J. Miller's main if not sole source of income is believed to be a monthly disability check from his disability retirement with the West Virginia State Police.

20.  Inasmuch as Myra Miller was drawing an excessively large salary as office manager at the clinic and the clinic was unlawfully operated as and essentially constituted a "pill mill," any proceeds derived by Myra Miller in the form of salary, bonuses or otherwise, from the clinic constitute proceeds or is traceable to proceeds of one or more violations of 21 U.S.C. §§ 846, 841(a)(1) and 843 and,

therefore, is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

21. Additionally, any refund by the Internal Revenue Service (IRS) of income tax withheld from her salary from the clinic is directly traceable to her employment and involvement with the clinic and likewise is subject to forfeiture to the United States, pursuant to 21 U.S.C. § 881(a)(6).

22. Furthermore, any properties, real or personal, acquired by her using proceeds traceable to her salary, bonuses or other receipts from the clinic likewise are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

23. BB&T account no. XXXXXX9439 was an active account maintained by Myra C. Miller and John J. Miller and was used extensively from 2004 through 2009 to pay mortgage payments, insurance premiums, credit card payments and various miscellaneous expenses. The source of numerous and substantial deposits into this account was primarily from Myra Miller's salary from the clinic. Other monies deposited into this account were commingled with Myra Miller's salary deposits to provide a funding source for all outgoing checks.

18

## Purchase of Defendant Real Properties with
## Proceeds Traceable to Controlled Substance Violations

### Property at 231 Central Avenue, South Williamson, Kentucky

24. The defendant real property identified as 231 Central Avenue, South Williamson, Kentucky, is the primary residence of Myra C. Miller and her husband, John J. Miller, and has been so since at least late 2007. Records from the Pike County Court Clerk's Office reveal an unusual chain of title for this property:

(A) On May 25, 2006, a deed transferring title to this property from Joyce Vinson, a widow, to John J. Miller and Myra C. Miller, his wife, was recorded in Deed Book 888 at page 262. The consideration paid for the property was stated as $200,000.

(B) At the time of recording the deed referenced in paragraph (A) above, a deed of trust was also recorded in Trust Deed Book 690 at page 487 to secure a mortgage in favor of BB&T in the amount of $160,000.

(C) On July 3, 2006, a deed transferring title to this property from John J. Miller and Myra C. Miller back to Joyce Vinson was recorded in Deed Book 890 at 366. The consideration indicated in this deed for this transfer was $200,000.

(D) On August 17, 2006, title to the property was transferred from the Estate of Joyce Vinson, who died on August 11, 2006, into the name of her son, Henry Vinson, by Probate Records and Will recorded in Will Book ZZ at pages 424 and 427.

19

(E)  By deed dated September 28, 2006, but not recorded until October 3, 2007, Henry Vinson conveyed the property solely into the name of Myra C. Miller, a married individual.  This deed was recorded on October 3, 2007, in Deed Book 911 at page 441.  The deed indicates that the consideration paid for the property was $200,000.

(F)  Check No. 13172, dated September 28, 2007, and drawn on the BB&T account no. XXXXXX9439 of Myra Miller, is payable to Henry Vinson in the amount of $200,000, in full payment of the property transfer set forth in paragraph (E) above.

(G)  On October 3, 2007, the mortgage recorded against the property in May 2006 (and referenced in paragraph (B) above), was released pursuant to a Release recorded in the Pike County Court Clerk's Office in Book 743 at page 321.

(H)  Also on October 3, 2007, a second deed of trust was recorded against the property by BB&T in Trust Deed Book 743 at page 322, to secure a mortgage in the amount of $160,000.  Bank records indicate that the purpose of this loan was to pay for a hunting trip to Africa for John J. Miller and the Millers' son.  This mortgage has not been released and, therefore, remains a lien against the property.

(I)  On or about April 21, 2010, a Retail Modification Agreement was recorded in the Pike County Court Clerk's Office in Trust Deed Book 829 at page 226, modifying the deed of trust

referenced in paragraph (H) above, by extending the maturity date of the mortgage from September 25, 2013, to April 14, 2040.

(J)   Records of BB&T checking account no. XXXXXX9439 reveal numerous payments made by Myra C. Miller on this mortgage.

(K)   Based on the outright payment for the property indicated in paragraph (F) and the mortgage as set forth in paragraph (I) above from BB&T account no. XXXXXX9439, the defendant real property identified as 231 Central Avenue, South Williamson, Kentucky, is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) as property traceable to proceeds from one or more violations of 21 U.S.C. §§ 801 et seq.

## The Gilmer County Property

23.   The defendant real property identified as 78 acres, more or less, of surface in Gilmer County, West Virginia, is a farm that was purchased by John J. Miller and Myra C. Miller from John Miller's parents pursuant to a deed dated April 21, 2006, and recorded in the Gilmer County Clerk's Office in Deed Book 469 at page 479.

(A)   The deed indicates that the consideration paid for the property was $50,000.

(B)   A credit line deed of trust in the amount of $40,000 was recorded against the property in Trust Deed Book 151 at page 454, to secure a loan by BB&T to the Millers for the purchase of this property.   Payments were made on this loan from the BB&T checking

account no. XXXXXX9439, with check no. 13336, paying the loan in full on March 11, 2008.

(C) Based on the credit line deed of trust being paid in full from BB&T account no. XXXXXX9439, the defendant real property identified as 78 Acres, more or less, of surface in Gilmer County, West Virginia, is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) as property traceable to proceeds from one or more violations of 21 U.S.C. §§ 801 et seq.

<b>The West Third Avenue Properties<br>
Are Forfeitable to the United States as Properties<br>
That Facilitated the Underlying Offense and as<br>
Properties Traceable to Proceeds of the Underlying Offense</b>

24.   From at least 2004 through and including March 2010, the real property commonly referred to as various lots of real property on West Third Avenue, Williamson, Mingo County, West Virginia, was the actual physical location for the various named clinics run by Myra Miller and others (see paragraphs 10(A) through (C) of this Amended Verified Complaint) and operated in violation of 21 U.S.C. §§ 846, 841(a)(1), 843.  Myra Miller, by and through her company, W D, LLC, acquired the property in October 2009 through four deeds recorded in the Mingo County Clerk's Office in Deed Book 428 at pages 713, 715, 717 and 719.  Prior to that time and throughout the earlier years of the clinic, the properties were owned by Vinsonian Investments, LLC, and "35 3rd Ave., LLC", companies owned and managed by Henry Vinson.

(A)   Since the properties consisted of the actual offices of the clinic where the controlled substance violations occurred for a number of years, the properties clearly facilitated and made possible the underlying offenses.  Due to the substantial connection these properties have to the underlying controlled substance violations, the real properties are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7).

(B)   The deeds indicate that the total consideration paid for all four properties was $1.4 million.  Inasmuch as Myra Miller's primary if not sole source of income at the time this property was acquired was her salary from the clinic, any payments for the property made by her at that time through and including the present which are traceable to her salary, bonuses or other compensation from the clinic also renders this property subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

<u>CONCLUSION</u>

25.  Based on the foregoing, Myra C. Miller conspired with others associated with the clinic throughout its years and forms of existence to unlawfully distribute hydrocodone and alprazalom, schedule III and IV controlled substances, outside the usual course of professional practice, and did in fact distribute and cause to be distributed such controlled substances outside the usual course of professional practice from 2004 to 2010, in violation of 21 U.S.C. §§ 841(a)(1), 846; and conspired with such persons to misuse

23

the DEA registration number issued to another person to unlawfully distribute such controlled substances, and did in fact misuse or cause others to misuse the DEA registration issued to another person, in violation of 21 U.S.C. §§ 846, 843.

26. For the foregoing reasons, the defendant currency and real properties are forfeitable to the United States, pursuant to 21 U.S.C. § 881(a)(6), as money or other things of value furnished or intended to be furnished in exchange for a controlled substance, or constituting proceeds traceable to such an exchange, or which were used or intended to be used to facilitate one or more controlled substance violations, 21 U.S.C. §§ 801 et seq. In the alternative, the defendant real property identified as various parcels on West Third Avenue, Williamson, Mingo County, West Virginia, is also forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(7) as real property which was used or intended to be used, in any manner or part, to commit or to facilitate the commission of one or more violations of 21 U.S.C. §§ 801 et seq.

WHEREFORE, the United States prays that process of warrant in rem issue for the arrest of the defendant currency; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property be forfeited to the United States for disposition according to law; and that the United States be granted such other

relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted,

UNITED STATES OF AMERICA
By Counsel

R. BOOTH GOODWIN II
United States Attorney

By:   s/Betty A. Pullin
      Betty A. Pullin, WV Bar Number: 5590
      Attorney for the United States
      United States Attorney's Office
      300 Virginia Street, East, Room 4000
      Charleston, West Virginia 25301
      Telephone: (304) 345-2200
      Fax: (304) 347-5104
      Email: betty.pullin@usdoj.gov

**VERIFICATION**

STATE OF WEST VIRGINIA
COUNTY OF KANAWHA, TO-WIT:

 I, James F. Lafferty II, Special Agent with the Federal Bureau of Investigation, declare under penalty of perjury as provided by 28 U.S.C. § 1746, the following:

 That the foregoing Complaint for Forfeiture _in_ _rem_ is based upon reports and information I have gathered and which have been provided to me by various law enforcement personnel, and that everything contained therein is true and correct to the best of my knowledge and belief, except where stated to be upon information and belief, in which case I believe it to be true.

 Executed on March 1, 2011.


_____
JAMES F. LAFFERTY II


 Taken, subscribed and sworn to before me this 1st day of March, 2011.

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
DIANA L. ROBERTS
1804 Anna Street
Charleston, WV 26302
My Commission Expires April 26, 2016

_____
Notary Public

My commission expires on April 26, 2015.

24