UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                           CIVIL ACTION NO. 2:10-1007

$475,823.75, MORE OR LESS,
IN UNITED STATES CURRENCY;
TWO REAL PROPERTIES IN
WEST VIRGINIA and ONE REAL
PROPERTY IN KENTUCKY, together
with all improvements thereon
and appurtenances thereto,

        Defendants.

(Myra C. Miller, and
 John J. Miller;
 No pending federal criminal charges)

MEMORANDUM OF LAW IN SUPPORT OF
UNITED STATES EX PARTE APPLICATION FOR A
RESTRAINING ORDER AND/OR INJUNCTION
PURSUANT TO 18 U.S.C. § 983(j)(1)(A)

I.   STATEMENT OF THE CASE

(A)  On March 1, 2011, the United States filed a motion with the court to amend the verified complaint for the purpose of adding, inter alia, the defendant real properties situated at and adjacent to 35 West Third Avenue, Williamson, Mingo County, West Virginia (hereinafter referred to as "the West Third Avenue properties"), as property subject to forfeiture pursuant to 21 U.S.C. §§ 881(a)(6), (a)(7), on the grounds that such properties

constitute proceeds traceable to one or more controlled substance violations, and were used or intended to be used to commit, or to facilitate the commission of, one or more felony controlled substance violations (Doc. 14, Exhibit 2, paragraph 24; Doc. 16).

(B)  On March 10, 2011, and shortly after the filing of the motion to amend the verified complaint, a deed of trust dated October 29, 2009, and designating "Henry Vinson" as its beneficial owner, was recorded in the Mingo County Clerk's Office in Trust Deed Book 429 at page 479.  See, "Govt's Exhibit A" to accompanying motion.[2]

(C)  On March 21, 2011, the court granted the government's motion to amend the verified complaint and the amended complaint was filed with the Clerk of this court.  (Doc. 16).  A Notice of Lis Pendens based on the amended complaint was recorded by the United States in the Mingo County Clerk's Office on March 23, 2011, in Lis Pendens Book 2 at page 645.

(D)  On March 31, 2011, the United States served additional possible claimants, including Henry Vinson, with the Amended Verified Complaint, Notice of Complaint for Forfeiture Against Real Property, and Warrant of Arrest in rem and Notice to Potential

---

[2]The United States did not become aware of the actual filing of this Deed of Trust until after claimant Vinson's counsel provided the government with a copy of the "Notice of Right to Cure Default" on July 18, 2011 (see paragraph (G) below), and the United States obtained a copy of the Deed of Trust from the Mingo County Clerk's Office.

Claimants, as evidenced by the Certificate of Service of record in this case (Doc. 23).

(E)  On April 8, 2011, and in accordance with 18 U.S.C. § 985(c)(3), the United States Marshals Service posted the West Third Avenue properties with a Notice of Forfeiture, as evidenced by the Process Receipt and Return on file in the Clerk's Office in this case, bringing the real property within the jurisdiction of the court.  (Doc. 30).

(F)  On May 3, 2011, counsel for Henry Vinson and two of Vinson's business entities filed a motion to intervene as claimants in this forfeiture action (Doc. 36),[3] which the court granted by Order filed on May 31, 2011 (Doc. 40).  Claimants filed their joint claim on May 3 (Doc. 38) and their joint answer on May 9, 2011 (Doc. 39).

(G)  On July 21, 2011, the undersigned counsel for the United States received a "Notice of Right to Cure Default" from attorney Paul Stroebel, relative to the deed of trust recorded on March 10, 2011, and of which Henry Vinson is the beneficial owner.  The

_____

[3]The United States inadvertently did not respond to this motion. It was unnecessary for Vinson et al. to file a "motion to intervene" in this forfeiture proceeding. Regardless of whether interested parties have notice of the forfeiture proceeding by service or by actual knowledge or by legal advertisement, any interested party may make themselves a claimant in a civil in rem forfeiture action simply by timely filing the appropriate pleadings, i.e., a verified claim and an answer. See, 18 U.S.C. § 983(a)(4); Rules G(4)(b)(i) and G(5), Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

3

Notice, dated July 18, 2011, gives Myra Miller and/or W D, LLC, 30 days within which to cure a default of 16 delinquent payments of $10,338.14 per month, or $151,908.71 total. If the default is not cured by the deadline, the Trustee (Robert Rufus) will sell the real estate pledged as collateral. <u>See</u>, "Govt's Exhibit B" to accompanying motion.

(H) The property pledged as collateral for the alleged loan that is in default is the same defendant property referred to above as the West Third Avenue properties. One or more of these properties are also allegedly being used at the present time for business purposes and presumably their owner(s) are being paid rental income for such usage.

(I) The purpose for the application for a restraining order and/or injunction is to secure, maintain, and preserve the availability of the West Third Avenue properties, and any proceeds (rental or otherwise) associated with those properties, for forfeiture pending resolution of this civil forfeiture action by restraining, enjoining and otherwise prohibiting claimants Henry Vinson, Thirty-Five Third Ave., LLC, and Vinsonian Investments, and anyone acting on their behalf or at their direction including but not limited to the Trustee Robert Rufus, from seizing, foreclosing on, selling, transferring, disposing of, encumbering, altering, remodeling or taking any other action against or involving the West Third Avenue properties, with the exception of routine maintenance

and upkeep, until this civil forfeiture action is resolved.

(J)   To the extent Myra Miller and/or W D, LLC, has exercised her/its right to cure, the application seeks to preserve any monies paid to cure the default by requiring those sums to be deposited with the Court and/or the United States Marshals Service pending resolution of this forfeiture proceeding.

(K)   To the extent Myra Miller and/or W D, LLC, are leasing or renting out any of the West Third Avenue properties, the United States requests that they be directed to furnish copies of the lease agreements to the United States or, if no such written agreements exist, to inform the United States in writing of the identities of the current occupants of the premises and the terms, financial and otherwise, governing the occupants' use of the property.

## II.   ARGUMENT

A.   The Court has Authority to Issue a Restraining Order and/or Injunction After a Civil Forfeiture Complaint has Been Filed.

Upon the filing of a civil forfeiture complaint, the Court is vested with wide authority to preserve the availability of property for forfeiture.  Section 983(j)(1)(A),[4] the provision governing the granting of restraining orders and/or injunctions to maintain and

---

[4]Enacted as part of the Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, § 21, 114 Stat. 202, 205 (2000) (hereinafter referred to as "CAFRA").

secure property following the filing of a civil forfeiture complaint, specifically provides:

> (1) Upon application of the United States, the court may enter a restraining order or injunction, require the execution of satisfactory performance bonds, create receiverships, appoint conservators, custodians, appraisers, accountants, or trustees, or take any other action to seize, secure, maintain, or preserve the availability of property subject to civil forfeiture-

> (A) upon the filing of a civil forfeiture complaint alleging that the property with respect to which the order is sought is subject to civil forfeiture.

18 U.S.C. § 983(j)(1)(A). The court may use § 983(j) to restrain a lienholder from foreclosing on real property pending trial or other resolution of the case. <u>United States v. Real Property...2526 155th Place SE</u>, 2008 WL 5246381, at *2 (W.D. Wash. 2008).

The statutory scheme for restraining orders and/or injunctions set forth in § 983(j)(1)(A) echoes that established in the criminal context by 21 U.S.C. § 853(e)(1)(A), the provision governing post-indictment restraining orders/injunctions in criminal forfeiture cases. In fact, the wording of § 983(j)(1)(A) almost precisely

tracks the language of 21 U.S.C. § 853(e)(1)(A),[5] with the obvious exception that the language "upon the filing of a civil forfeiture complaint" is substituted for "upon the filing of an indictment or information."  Given these similarities in the two statutes, § 853(e)(1)(A), and the cases interpreting it, are useful as guides to analyzing §983(j)(1)(A).  See United States v. Jones, 160 F.3d 641, 649 n.5 (10th Cir. 1998)(noting that another statute, 18 U.S.C. § 1963(d)(1), "is identical in all pertinent respects to 21 U.S.C. § 853(e)(1)," and "may be used to construe § 853 due to the similarity of the two statutes")(internal citation omitted). Indeed, a prior version of CAFRA made explicit Congress' intention to extend the existing criminal forfeiture protective order provisions to the civil context, allowing the Court, before or

---

[5] 21 U.S.C. § 853(e)(1)(A) provides:

> (1) Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) of this section for forfeiture under this section--
>
> (A) upon the filing of an indictment or information charging a violation of this subchapter or subchapter II of this chapter for which criminal forfeiture may be ordered under this section and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section.

after the filing of a forfeiture complaint, to "enter any restraining order or injunction in the manner set forth in... 21 U.S.C. § 853(e)." H.Rep. 105-358(1).

The language of the criminal and civil restraining order provisions is straightforward, authorizing the Court to enter a range of orders designed to maintain and preserve the availability of property for forfeiture "upon the filing" of the relevant document commencing the action. Interpreting this language, the First Circuit has made clear that "under § 853(e)(1)(A), the indictment itself establishes the merits of the government's case" for purposes of obtaining a protective order. United States v. Cunan, 64 F.3d 752, 756 (1st Cir. 1995). The same rule should apply in the civil context, with the probable cause established in the United States' complaint being determinative for the purposes of issuing a post-complaint restraining order. See Cunan, 64 F.3d at 756 ("For the purposes of issuing a restraining order, the probable cause established in the indictment...is to be determinative of any issue regarding the merits of the government's case on which the forfeiture is to be based")(quoting 1984 U.S.C.C.A.N. at 3386).

Similarly, as the First Circuit noted in Cunan, the criminal statutory scheme distinguishes between protective orders sought before a case has been brought, which require specific findings by the Court, and those sought after a case has been brought, which do not. See Cunan, 64 F.3d at 756. CAFRA applies the same statutory

8

scheme in the civil context. Thus, in contrast to 18 U.S.C. § 983(j)(1)(B), the provision governing the issuance of restraining orders <u>prior to</u> the filing of a civil forfeiture complaint, § 983(j)(1)(A) does not require any additional factual determinations by the Court. Instead, the filing of the civil complaint alleging the forfeitability of the property suffices as a basis for a restraining order and/or injunction under CAFRA. This requirement is plainly met in this case, because, as noted above, the United States has filed a complaint alleging that defendant real properties are subject to forfeiture. The Court may therefore enter a restraining order under § 983(j)(1)(A).[6]

    2.   <u>The restraining order/injunction sought by the United States serves the interests underlying § 983(j)(1)(A)</u>

The governmental interests to be considered in fashioning a restraining order are evident from the statutory language: "to seize, secure, maintain, or preserve the availability of property

---

[6] The United States notes that the Supplemental Rules for Certain Admiralty and Maritime Claims, which govern <u>in rem</u> civil forfeiture actions, also give this Court authority to issue protective orders. Rule E(10) of the Supplemental Rules provides:

> (10) Preservation of Property. When the owner or another person remains in possession of property attached or arrested under the provisions of Rule E(4)(b) that permit execution of process without taking actual possession, <u>the court, on a party's motion or on its own, may enter any order necessary to preserve the property</u> and prevent its removal.

(emphasis added.)

subject to civil forfeiture." 18 U.S.C. § 983(j)(1)(A). Upon the conclusion of the forfeiture action, if the United States prevails, the West Third Avenue properties will be forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6) as properties traceable to proceeds from controlled substance violations, and/or pursuant to 21 U.S.C. § 881(a)(7) as real property used to facilitate controlled substance offenses.

As the Supreme Court has made clear in the analogous criminal context, the purpose of the provision authorizing protective orders is to ensure that the commands of the substantive forfeiture provision are carried out, that is, that the property remains fully available at the end of the case. United States v. Monsanto, 491 U.S. 600, 612-613 (1989); see In re Billman, 915 F.2d 916, 921 (4th Cir. 1990), cert. denied, sub nom., McKinney v. United States, 500 U.S. 952 (1991); and United States v. Bollin, 264 F.3d 391, 421 (4th Cir.), cert. denied, sub nom., Tietjen v. United States, 534 U.S. 935 (2001), and Gormley v. United States, 535 U.S. 989 (2002). Similarly, in the civil forfeiture context, the Supreme Court -- even prior to enactment of CAFRA -- noted that "the Government's legitimate interests at the inception of forfeiture proceedings are to ensure that the property not be sold, destroyed, or used for further illegal activity prior to the forfeiture judgment." United States v. James Daniel Good Real Property, 510 U.S. 43, 58 (1993).

Here, the restraining order sought by the United States serves these interests directly. The proposed order requires the owner or other potential claimants to take certain, basic steps to ensure that the West Third Avenue properties (or their full value) remain available for forfeiture. While these activities are explained in more detail in the attached proposed order, they are summarized below.

First, the proposed order prohibits (except with permission of the Court) the foreclosure, sale, or transfer of the West Third Avenue properties. Obviously, if the property is sold, transferred or otherwise placed outside the jurisdiction of the Court, it may not be available for forfeiture. To preserve the interest of the United States in the value of the property, if any Court-approved transfer takes place, the proposed order requires that the proceeds be made available as a substitute *res*. The proposed restraining order also seeks to preserve the property by prohibiting the owners from knowingly allowing any illegal activity on the premises.

Second, the proposed order serves the United States' recognized interest in maintaining the full value of the forfeitable property. It requires reasonable precautions to prevent physical damage. *Cf.* 18 U.S.C. § 2232 (providing up to five years' imprisonment for anyone who knowingly "destroys, damages, [or] wastes" property that is "subject to the in rem jurisdiction of a United States court for purposes of civil

forfeiture under federal law," for the purpose of "impairing or defeating the court's continuing <u>in</u> <u>rem</u> jurisdiction over the property"). The proposed order also seeks to prevent diminution of the property's value. It requires the owner to perform normal maintenance of the yard and grounds, to maintain fire, flood, and hazard insurance, and to pay taxes. It further requires the owner to relinquish and/or pay over to the Court any rent paid for the present use of the real properties.

In addition, the proposed order is narrow in scope. It only restrains the West Third Avenue properties from being foreclosed on, sold, transferred or disposed of by various means, or used for illegal activity. The order also does not seek the seizure of the properties; they will remain under the possession and control of their current owners. The requested order simply provides some short term restraints to prevent the properties from being dissipated or removed from the Court's jurisdiction. In sum, the proposed order enables the Court to ensure that the West Third Avenue properties, and any proceeds generated from their use and/or foreclosure are secured, maintained and preserved for forfeiture.

3.    Due Process does not Mandate a Post-Restraint
      Hearing on the Circumstances Presented in this Case.

The statutory scheme set forth in 18 U.S.C. § 983(j)(1) provides for the court to conduct a hearing before issuing a restraining order if the government's application is made prior to the filing of a complaint, but no such hearing is statutorily prescribed if the application is made after the complaint has been filed. Compare, 18 U.S.C. §§ 983(j)(1)(A) and (B). Circumstances may exist, however, where due process would require a post-restraint hearing, most likely in the context of the claimant needing the restrained assets to pay attorney's fees on associated criminal charges. United States v. Melrose East Subdivision, 357 F.3d 493, 499 (5th Cir. 2004). Recognizing that neither due process nor the Sixth Amendment require that assets needed to pay an attorney be exempted from forfeiture, courts have held that the district court's responsibility in those circumstances is to hold a hearing simply to ensure that the restrained assets are properly subject to forfeiture. 357 F.3d at 500. The government's standard of proof in such a hearing is probable cause that the properties constitute proceeds of the offense and/or facilitated the offense.

A post-restraint hearing is not mandated in this case. There are presently no pending criminal charges against claimants Henry Vinson, Vinsonian Investments or Thirty-Five Third Ave., LLC.

13

CONCLUSION

WHEREFORE, for the foregoing reasons, the United States respectfully prays that this Court enter the requested restraining order and/or injunction.

Respectfully submitted,

UNITED STATES OF AMERICA
By Counsel

R. BOOTH GOODWIN II
United States Attorney

By:  s/Betty A. Pullin
Betty A. Pullin, WV Bar Number: 5590
Attorney for the United States
United States Attorney's Office
300 Virginia Street, East, Room 4000
Charleston, West Virginia 25301
Telephone: (304) 345-2200
Fax: (304) 347-5440
Email: betty.pullin@usdoj.gov

14